**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JEAN B. GERMAIN                                    *

Plaintiff                                          *

v                                                  *          Civil Action No. JFM-12-1274
                                                              (Consolidated Case JFM-12-1255)
LT. D. L. SMITH, *et al*.                          *

Defendants                                         *
                                                 ***

## MEMORANDUM

Plaintiff Jean B. Germain ("Germain") filed the above-captioned civil rights case seeking declaratory and injunctive relief.  ECF Nos. 1, 5 and 7.  This court ordered defendants to show cause why the relief sought should not be granted.  ECF No. 16.  Defendants' response to show cause was construed as a motion for summary judgment.  ECF No. 22.  Germain opposes the motion. ECF Nos. 24 and 28.  Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, the motion for summary judgment will be granted and judgment will be entered in favor of defendants.

## Background

Germain claims that on April 12, 2012, he was placed on administrative segregation on the orders of Lt. P.H. Pennington, housing unit 2 manager.  He states that when he arrived in housing unit 1, Corporals Lambert and Ortit told him he would be moving to a double cell. Germain told Lambert and Ortit that he could not be double celled, but the officers used force to drag him into the cell.  When Germain continued to refuse to go into the cell he was taken to isolation cell where his clothing and property was confiscated; he was given an orange jumpsuit and a mattress.  Germain states that during his confinement to the isolation cell, he was denied

medical care for his injuries, denied access to sick call slips, and denied access to incoming and outgoing mail.[1]  Germain remained in the isolation cell until April 16, 2012, when he was moved to a regular cell.  ECF No. 1 at pp. 3 – 4.  In an amended complaint Germain states that his shoulder "popped" when the officers forcibly cuffed him and, despite his continued requests, he was not given medical attention for the injury.  ECF No. 14 at pp. 6 and 7. He claims he asked Corporal Conrad and Lt. Smith for medical attention, but neither did anything for him.  *Id*. at p. 7.

On April 19, 2012, Germain states he handed two requests for Administrative Remedies (ARPs) to Officer J. Farris.  One ARP was a challenge to the conditions of the isolation cell and the other sought emergency medical care because he had not been seen after submitting three sick call slips.  Later the same day, Germain gave Farris an envelope containing his post-conviction petition, two grievances, and a motion for temporary restraining order for purposes of mailing the documents to the Circuit Court for Allegany County.  Germain claims his legal papers were confiscated and that Farris told him the following day that Lt. D.L. Smith was holding his papers.  ECF No. 1 at pp. 4 – 5.

Germain adds that on April 13, 2012, he was told he was being placed on administrative segregation pending an investigation into allegations that he was trafficking in drugs and unauthorized digital video discs.  ECF No. 7 at p. 2.  He claims the stated reason was a pretext and he was actually singled out for purposes of retaliating against him for the numerous legal actions he has filed.  *Id*. at p. 3. Additionally, Germain claims that on April 13, 2012, Officer Grubb discharged a chemical weapon into the cell of another inmate who was housed "adjacent"

---

[1]  In an amended complaint Germain admits he was given a towel, a wash cloth, hygiene items and a brown bag lunch on the day he was put into the isolation cell.  ECF No. 14 at p. 7.

to him.  He states that due to poor ventilation, he suffered the effects of the chemical agent for 10 to 15 minutes and defendants refused to evacuate him from his cell.  ECF No. 4 at p. 2.

On April 24, 2012, Germain was seen by Dr. Ottey for "joint pains" and was prescribed pain medication as well as an order to be cuffed in front.  Dr. Ottey also scheduled Germain for an x-ray.  Despite the medical order, Germain claims that on April 26, 2012, Farris cuffed his hands from behind and escorted him to Western Correctional Institution (WCI) for his x-ray. Germain was cuffed in this manner for approximately 40 minutes, causing aggravation of his shoulder injury.  ECF No. 14 at pp. 10 – 11.

Germain claims that the retaliation against him is based on his successful challenge to of prison disciplinary offense before the Inmate Grievance Office (IGO).   He claims that on November 23, 2010, Hearing Officer John Sandstrom found him guilty of an infraction.  At a subsequent IGO hearing, the Administrative Law Judge "rebuked" Sandstrom for being biased against Germain and reversed the adjustment conviction.  At a subsequent hearing,[2] Sandstrom refused to accept Germain's evidence and Germain moved for dismissal of the charges.[3] Germain attempted to argue that he had a single cell assignment, but Sandstrom would not consider it as evidence.   As a result Sandstrom found Germain guilty of the charges and sanctioned him with 30 days of segregation.  ECF No. 14 at pp. 11 – 12.

Defendants assert that Germain is permitted to access his legal materials and may keep 1.5 cubic feet of paperwork in his cell, with any excess property kept in the housing unit property room.  An inmate may exchange materials from his cell with any materials kept in the property room.  Defendants state that Germain has not been denied the ability to make legal copies and note that he has filed fifteen different documents in this case since his placement in Housing Unit

---

[2] The court presumes the subsequent hearing is unrelated to the matter overturned by the IGO.

[3] Germain does not include a description of the offense with which he was charged.

1. Additionally, defendants note that during the same time frame, Germain has filed three ARP complaints. ECF No. 21 at Ex. 1 – 4. The three ARPs concerned an allegation that corrupt officers were cancelling library for no reason; that the medical department improperly claimed he refused to show on April 30, 2012; and that he was not allowed to enjoy play station while on administrative segregation. *Id.* at Ex. 7, p. 3.

With respect to Germain's claim about denial of medical care, defendants state that he was seen by a nurse on April 11, 2012, who indicated there was no problem with moving Germain to segregation. ECF No. 21 at Ex. 8, p. 1. Additionally, Germain was seen on April 19, 2012, in response to a sick call slip he submitted complaining that he had a cold and that during a use of force he threw himself on the floor and hurt his knees, neck and shoulder. *Id.* at p. 4. Upon examination Germain's gait was noted to be within normal limits and no swelling, redness, or other marks were seen on his shoulder, elbow or knees. *Id.* An x-ray of Germain's shoulder revealed no significant abnormalities. *Id.* at p. 6. Germain was seen several times afterwards. *Id.* at pp. 9, 11, 12, 14, 15, 18, 21 and 22.

Defendants assert there was no use of force involved when Germain refused to accept housing in a double cell on April 10, 2012. ECF No. 21 at Ex. 9. Officer Lambert states that Germain threw himself to the floor, hurting his knees, neck and shoulder and admitted to doing so. *Id.* and Ex. 8, p. 4. Germain was given an institutional infraction for his refusal to accept housing and was placed in a temporary cell. *Id.* at Ex. 10. Despite his assertions otherwise, Germain was not on single cell status at the time of his refusal and he was found guilty of the infractions charged. *Id.* at Ex. 10.

Germain was assigned to administrative segregation because there was reason to believe he presented a danger to the security of the institution. ECF No. 21 at Ex. 16. Lt. Pennington

claims there was information indicating that Germain was trafficking in drugs and DVDs while assigned to Housing Unit 2. *Id*. at Ex. 17 and 18. During the investigation into the allegations, Germain was assigned to administrative segregation with periodic reviews of his assignment. *Id*. at Ex. 20.

## Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Germain's claim that he was kept from communicating with the court during his confinement to the isolation cell is belied by the record in this and other cases pending in this court during the relevant time frame. Even if during the six days he was confined, Germain was unable to mail documents out of the prison or receive incoming mail, he has failed to establish an

actual injury resulting from that inability.  *See* ECF No. 24 at p. 4.  Germain admits he received his mail after he was moved out of the isolation cell.  *Id.*   While the interference by prison officials with certain types of mail may state a constitutional claim, occasional incidents of delay or non-delivery of mail do not rise to a constitutional level.  *See Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990).  Absent any assertion by Germain that he suffered an actual injury (such as a missed legal deadline) as a result of his outgoing letter being confiscated, his complaint simply does not state a claim upon which relief may be granted.

Germain asserts that his inability to file an ARP prohibits him from accessing the courts regarding the matters asserted in the ARPs.  ECF No. 24 at p. 2 and ECF No. 28 at pp. 13 – 14. He further claims that "prison guards have a constitutional duty to assist prisoners to file non-frivolous claim (sic)."  ECF No. 28 at p. 14.  Germain neglects to state the subject matter of the ARPs that were allegedly confiscated.  Thus, it is impossible to discern whether he was deprived of an opportunity to raise a meritorious claim concerning the conditions of his confinement. Additionally, Germain provides no statement regarding the state claim he intended to file in state court after exhausting administrative remedies,[4] nor has he established that he has been barred from bringing a meritorious claim in state court as a result of the alleged destruction of his ARPs. Likewise, his claim regarding delays in returning legal copies to him does not establish an actual injury. ECF No. 28 at p. 16.  Absent evidence of an actual injury, Germain is asking this court to engage in hypothetical analysis of a potential claim that might arise if the requisite facts were established.  This court may not engage in such analysis.

---

[4] Germain attaches two orders from the Circuit Court for Baltimore City dismissing two different cases he filed. ECF No. 24 at Ex. 8 and 9. There is no indication regarding the basis for the dismissal and it cannot be discerned whether the alleged refusal to process Germain's ARPs played any role in the dismissal of his claims.

<u>Retaliation</u>

To make out a prima facie case of retaliation, plaintiff has the burden of showing that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the conduct of Defendants. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).    In the prison context, plaintiff must establish that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *See Rizzo v. Dawson*, 778 F.2d 527, 532 & n. 4 (9th Cir.1985). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id*. at 532. After plaintiff makes a prima facie showing, the burden shifts to defendants to demonstrate that they would have reached the same decision even in the absence of plaintiff's constitutionally protected conduct. *Mt. Healthy*, 429 U.S. at 287.

Germain asserts he was assigned to administrative segregation as retaliation for successfully challenging a prison disciplinary matter.  ECF No. 14 at pp. 11 – 12.  He further claims that the reasons provided for his assignment did not appear to be true since his property was not searched with drug-detecting dogs, he was not drug tested, and his property was not x-rayed. ECF No. 24 at p. 2.  Defendants assert that information was received that Germain was involved in trafficking DVDs and drugs in housing unit 2.  ECF No. 21 at Ex. 18.  There is no indication regarding how Germain was alleged to be involved in the trafficking.  How prison officials choose to investigate matters pertaining to internal security of the prison is simply not a matter for this court to second-guess.  The failure to perform specific searches or tests in light of the allegations against Germain does not establish that his assignment to administrative segregation was pretextual and Germain has failed to demonstrate that his assignment did not

promote the internal security of the prison.   *See Rizzo*, 778 F. 2d at 532.   The claim, therefore, fails.

Medical Care

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.   *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).   "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."   *De Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available.   *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Germain asserts that prison staff were aware of his injuries.   ECF No. 28 at pp. 3 -4 .   He does not state how, other than the requests he made to be seen by medical providers, his injuries would have been obvious to the officers who observed him.   The medical records submitted by defendants do not depict injuries that are so severe or obvious that a lay person would conclude that medical care was needed.   Rather, the records establish that Germain did not suffer an injury to his shoulder and, to the extent he experienced pain, it was treated with Extra Strength Tylenol. There was no objectively serious medical condition at issue in this case.

Germain's claim that he was cuffed in front for forty minutes contrary to a medical order stating he should be cuffed from behind, also does not state a claim. It is clear the cuff-in-front order was issued on April 24, 2012, but it does not appear to have been sent to the housing unit until April 28, 2012. ECF No. 21 at Ex. 8 at p. 12. When Germain was taken for an x-ray of his shoulder on April 26, 2012, he was cuffed from behind, but there is no evidence that the violation of the medical order was deliberate. In fact, there is evidence that prison officials were unaware of the medical order. Defendants are entitled to summary judgment on this claim.

Conditions of Confinement

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) *citing Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious

danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010), *quoting Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir.2002). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003).

In the instant case there was no bright line crossed by defendants in placing Germain in an isolation cell after he refused to share a cell with another inmate. The conditions as described by Germain were not so severe that defendants could be charged with "fair warning that their conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F. 3d 2929, 313 (4th Cir. 2006). Germain admits he was provided clothing (a jumpsuit), a mattress, hygiene items, a towel and wash cloth, as well as a bagged meal.[5] To the extent he was not allowed to access all of his property or the meal was not to his liking, such discomforts are not a basis for an Eighth Amendment violation. The discomforts experienced by Germain in the isolation cell were

---

[5] Germain alleges in his opposition that he was deprived of sheets, a blanket and clothing. ECF No. 28 at p. 12. He admits otherwise in his earlier statements to this court. ECF No. 1 and 14.

restrictive and harsh, but did not impose cruel and unusual punishment on plaintiff.   This conclusion is supported by the absence of proof of significant, serious physical or psychological injury resulting from Germain's temporary, six-day stay in the isolation cell.   Defendants are entitled to summary judgment on this claim.

Excessive Force

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).   This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986).   The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010).   The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.*

Germain claims that force was used against him when he was placed in the isolation cell. ECF No. 1 and 14. Defendants deny using force against Germain when they placed him in the cell on April 10, 2012.   ECF No. 21.   As established by the medical records submitted, he suffered no significant injury.   Also established by the record, Germain was refusing a housing assignment on the false basis that he was only supposed to be housed in a single cell.   ECF No. 21 at Ex. 10.   Germain's refusal is a disruption in the security of the institution justifying some

use of force.  Placing him in restraints and confining him to a cell was the minimal force required to restore discipline.

Germain also claims he was improperly exposed to the effects of mace or pepper spray when another inmate, Kevin Mosby, was maced.  Mosby had damaged the fire suppression system in his assigned cell and was being escorted to housing unit 1, cell C-30, when he became aggressive toward Officer Grubb.  Mosby attempted to grab Grubb through the open slot of the cell and Grubb deployed a chemical agent through the open slot in an attempt to stop the assault. Grubb states that Germain was not involved in the incident and he offered no complaints or comments indicating that he was suffering ill-effects of the chemical agent.  ECF No. 21 at Ex. 14.  The incident occurred on April 13, 2012, when Germain was assigned to the isolation cell which he did not share with Mosby.  *Id*. at Ex. 15. There is no evidence that Germain complained about being exposed to pepper spray or that any of the defendants knew he needed assistance. Without some evidence of intentional conduct by defendants, there is no basis for an Eighth Amendment claim.

Having found no basis for a constitutional claim, this court concludes that Germain is not entitled to the relief sought and that judgment should be entered in favor of defendants.  A separate order follows.


    September 28, 2012                                  /s/
Date                                             J. Frederick Motz
                                                 United States District Judge